**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-01326-RBJ-KLM

JAMES SARDAKOWSKI,

　　　　Plaintiff,

v.

TOM CLEMENTS, et al.,

　　　　Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

---

**INTRODUCTION**

　　　　This case arises out of Plaintiff James Sardakowski's incarceration in the Colorado

Department of Corrections ("CDOC"). Plaintiff, who is mentally ill and developmentally disabled,

alleges that Defendants have violated his Eighth Amendment rights by denying him adequate mental

health treatment and by placing and retaining him in solitary confinement. Plaintiff also alleges that

Defendants have discriminated against him on the basis of his disability in violation of the

Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and § 504 of the Rehabilitation

Act of 1973 ("RA"), 29 U.S.C. § 794.

**FACTS**

　　　　Mr. Sardakowski suffers from mental illness and has a developmental disability. Compl., Doc.

62, ¶¶ 5, 21-22. He is currently incarcerated in CDOC in solitary confinement. *Id.* at ¶¶ 15, 139.

Now 26 years old, Mr. Sardakowski began receiving treatment for mental illness at age five. *Id.* at ¶¶

15, 17. As a child, Mr. Sardakowski was the victim of ongoing sexual, physical, and psychological

1

abuse. *Id.* at ¶ 16. At various points prior to and during his incarceration, he has been diagnosed with a number of mental health disorders. *Id.* at ¶ 21.

Mr. Sardakowski began his incarceration at San Carlos Correctional Facility ("San Carlos"), a facility for mentally ill inmates. *Id.* at ¶¶ 23-24. Mr. Sardakowski participated in programs for developmentally disabled prisoners at San Carlos, and later at Colorado Territorial Correctional Facility ("Territorial"). *Id.* at ¶¶ 28, 30. After being transferred to several other facilities, Mr. Sardakowski was given an "administrative segregation" classification and transferred to solitary confinement at Colorado State Penitentiary ("CSP") on December 23, 2009. *Id.* at ¶ 50.

Conditions of solitary confinement at CSP subject Mr. Sardakowski to prolonged and indefinite isolation. *Id.* at ¶ 62. For 23 hours a day, Mr. Sardakowski is held in a small concrete cell measuring approximately 80 square feet. *Id.* at ¶¶ 53, 59. He is allowed, at most, five hours a week out of his cell, and he is never allowed outdoor exercise. *Id.* at ¶¶ 59-60. His interaction with other inmates is extremely limited; he has a hearing disability that prevents him from using the only communication available—yelling through the slot in the solid steel door. *Id.* at ¶ 55.

The harmful effects of prolonged isolation on individuals with severe mental illness are well documented in the correctional community. *Id.* at ¶ 66. Numerous cases have highlighted the profound psychological risks of long-term isolation. *Id.* CDOC officials were and are aware that solitary confinement exacerbates symptoms of mental illness. *Id.* at ¶ 67.

Since being subjected to solitary confinement, Mr. Sardakowski's symptoms of mental illness have worsened, resulting in repeated and ongoing incidents of self-harm, including attempted self-castration. *Id.* at ¶¶ 78, 84, 86, 106, 115-16, 138. As a result of one of these incidents, Mr. Sardakowski was hospitalized and almost lost his testes. *Id.* at ¶ 86. Several similar incidents resulted in Mr. Sardakowski being placed in four-point restraints at a prison infirmary, sometimes for several

days at a time. *Id.* at ¶¶ 116-19, 132. While restrained, Mr. Sardakowski told CDOC staff that he was powerless to control his self-harm in solitary confinement and would continue to self-mutilate if returned to administrative segregation. *Id.* at ¶¶ 120, 126, 135. After each of these incidents, prison officials sent him back to solitary confinement. *Id.* at ¶¶ 129, 136.

Mr. Sardakowski has participated in two programs designed to allow prisoners to "level out" of administrative segregation: the Offenders with Mental Illness ("OMI") Program and the Privilege Level Program. *Id.* at ¶¶ 63, 70, 74. Both programs require prisoners to meet behavioral goals to progress through a number of levels. *Id.* at ¶ 63. Mr. Sardakowski's symptoms of mental illness at times manifest as disruptive behaviors, resulting in repeated removal from the OMI program and failure to progress beyond the lowest levels of the Privilege Level Program. *Id.* at ¶¶ 70, 71, 74. Mr. Sardakowski's mental illness and developmental disability interfere with his ability to meet the long-term goals required to progress through each level. *Id.* at ¶ 75.

Mr. Sardakowski's mental health continues to deteriorate, and he continues to mutilate himself. *Id.* at ¶¶ 138-39. He remains in solitary confinement. *Id.* at ¶ 139.

## ARGUMENT

### I.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Jordan-Arapahoe, LLP v. Bd. of Cnty. Cmm'rs*, 633 F. 3d 1022, 1025 (10th Cir. 2011) (*quoting Iqbal*, 556 U.S. at 678). The Court must "accept as true all well-pleaded factual allegations in a complaint and view

these allegations in the light most favorable to the plaintiff." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## II.    Eighth Amendment Claims

In his Amended Complaint, Mr. Sardakowski alleges that Defendants have violated the Eighth Amendment in two ways. First, Mr. Sardakowski alleges that Defendants were deliberately indifferent to his serious mental illness by failing to provide him adequate mental health care (Claim One). Second, Mr. Sardakowski alleges that, given his severe mental illness, Defendants violated the Eighth Amendment by placing and retaining him in solitary confinement (Claim Two).

The Eighth Amendment proscribes the infliction of "cruel and unusual punishment" and requires prison officials to provide humane conditions of confinement consistent with "contemporary standards of decency." *Estelle v. Gamble,* 429 U.S. 97, 102, 103 (1976); *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996). Eighth Amendment claims have an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is sufficiently serious to implicate constitutional protection, and (2) prison officials acted with deliberate indifference to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834) (internal quotations omitted).

### A.  Mr. Sardakowski states a claim that Defendants have violated the Eighth Amendment by denying him adequate mental health care.

In Claim One, Mr. Sardakowski alleges that Defendants violated and continue to violate the Eighth Amendment by failing to provide adequate treatment for his severe mental illness. Doc. 62 ¶¶ 162-69. Prison officials violate the Eighth Amendment when they are deliberately indifferent to

the serious medical needs of prisoners. *Estelle*, 429 U.S. at 104. In the Tenth Circuit, it is well established that mental illness constitutes a serious medical need. *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980) (The duty to provide medical care "includes medical treatment for inmates' physical ills, dental care, and psychological or psychiatric care." (citations omitted)). As set forth below, Mr. Sardakowski alleges facts sufficient to demonstrate that Defendants have been and continue to be deliberately indifferent to his serious mental health needs by denying him adequate treatment.

The objective prong of the Eighth Amendment is satisfied when prison officials deprive a prisoner of a basic life necessity. *Farmer,* 511 U.S. at 834. Treatment of serious medical needs, including mental health needs, is a basic life necessity. *Ramos*, 639 F.2d at 574. "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

Mr. Sardakowski alleges in his Amended Complaint that he is seriously mentally ill. Doc. 62 ¶¶ 1, 5, 17. He alleges that CDOC mental health records indicate that he has been diagnosed with serious mental illness and spent time in psychiatric facilities prior to his incarceration. *Id.* at ¶¶ 18-21. He also alleges that he has been prescribed psychotropic medications at various points during his incarceration. *Id.* at ¶¶ 26, 35, 82, 91, 133. Mr. Sardakowski has alleged facts sufficient to demonstrate that his mental illness is a medical need that has been diagnosed by a physician as mandating treatment.

Further, Mr. Sardakowski alleges facts sufficient to demonstrate that his medical need is so obvious that a lay person would recognize that it requires treatment. Specifically, Mr. Sardakowski alleges that he repeatedly engages in a form of self-mutilation known as "tying off" (tying a string

around his testicles). *Id.* at ¶¶ 84, 86, 106-07, 115, 131-32. One of these incidents was so serious that he required hospitalization. *Id.* at ¶ 86. The attending physician was unsure if Mr. Sardakowski's testicles would "survive [the] event." *Id.* The acts of self-mutilation Mr. Sardakowski alleges sufficiently demonstrate that his serious mental illness is so obvious that even a lay person would recognize that it requires treatment. *Ramos*, 639 F.2d at 575.

Finally, Defendants do not dispute in their Motion to Dismiss that Mr. Sardakowski alleges facts sufficient to demonstrate a serious medical need. *See* Def.'s Mot. Dismiss, Doc. 79, at 3-5. Mr. Sardakowski has satisfied the objective prong at this early stage of proceedings.

To satisfy the subjective prong, a prisoner must show that prison officials were deliberately indifferent to his serious medical need. *Self v. Crum*, 439 F.3d at 1230 (quoting *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent when he "'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* at 1231 (quoting *Farmer*, 511 U.S. at 837). In the context of medical care, prison officials are deliberately indifferent when they know of a serious medical need and fail to provide adequate treatment for that need. *Sealock*, 218 F.3d at 1211.

To show that a prison official had actual knowledge of the risk, a plaintiff may allege facts sufficient to demonstrate that that the risk "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842-43. In *Blackmon v. Board of County Commissioners of Sedgwick County, Kansas*, the court considered whether prison officials exposed a juvenile detainee to a substantial risk of serious harm by denying him mental health treatment. 2012 WL 2512722, at *18-19 (D. Kan. June 29, 2012). Denying the defendants' motion for summary judgment, the court held that a fact-finder could conclude that prison officials "must have known about" a substantial risk of serious

harm to mental health because they were aware that the plaintiff "continued to self-harm, verbalize suicidal intentions and exhibit signs of severe mental illness, which [were] so severe that he was hospitalized." *Id.* at *19.

Here, Mr. Sardakowski sufficiently alleges that Defendants have actual knowledge of his serious mental illness. In his Amended Complaint, Mr. Sardakowski alleges that his CDOC records reference a long history of psychiatric treatment as well as multiple diagnoses of serious mental illness. Doc. 62 ¶¶ 19-21. He also alleges that prison officials made numerous notations about his ongoing symptoms of mental illness in his prison mental health record. *Id.* at ¶¶ 78, 94, 107, 123. Furthermore, he alleges that prison officials were aware of his mental deterioration in administrative segregation, as evidenced by repeated and ongoing incidents of self-mutilation. *Id.* at ¶¶ 78, 84, 86, 105-07, 115-29, 138. Mr. Sardakowski has alleged facts sufficient to demonstrate that Defendants had actual knowledge of his serious medical need, and Defendants do not appear to dispute this element in their Motion to Dismiss. *See* Doc. 79 at 3-5.

Prison officials who know of a serious medical need are deliberately indifferent when they disregard that need by denying treatment or preventing a prisoner from receiving treatment. *Sealock*, 218 F.3d at 1211. The Tenth Circuit recognizes that prison officials deny treatment when they fail to treat a serious medical condition properly. *Id.* Thus, a plaintiff may show disregard by alleging that prison officials failed to provide adequate medical treatment. *Id.*

Courts have found inadequate treatment after considering facts similar to those alleged in the Amended Complaint. In *Ruiz v. Estelle*, the court found that "[t]reatment must entail more than segregation and close supervision" of mentally ill prisoners. 503 F. Supp. 1265, 1339 (S.D. Tex. 1980), *aff'd in part & rev'd in part,* 679 F.2d 1115 (5th Cir. 1982). Treatment was inadequate where "an inmate with a mental disorder is ignored by unit officers until his condition becomes serious." *Id.* at

1332. "[A] large number of inmates resort to self-mutilations and suicide attempts, as dramatic cries for help." *Id.* at 1334. In response, prison officials would send some of these prisoners to the "Treatment Center" where conditions mirrored administrative segregation. *Id.* at 1332, 1335. The court found that prison officials failed to provide adequate treatment where they merely segregated and supervised severely mentally ill inmates. *Id.* at 1339.

Similarly, in *Indiana Protection and Advocacy Services Commission v. Commissioner, Indiana Department of Corrections*, the court found inadequate treatment where defendants segregated prisoners in response to self-harm and suicide threats or attempts. 2012 WL 6738517, at *17, 23 (S.D. Ind. Dec. 31, 2012). "The goal of mental health care in the correctional setting is to prevent harm from occurring to prisoners and to prevent prisoners from causing harm as a consequence of a mental condition that significantly influences their behavior." *Id.* at *15. The court noted that suicide watch "results, in the short term, in a decreased risk of repeated efforts of self-harm. The prisoner's symptoms, however, will likely intensify unless [suicide watch] is accompanied by appropriate therapy." *Id.* at *17. When suicide watch is not accompanied by more intense intervention to address the underlying mental illness, prison officials have failed to provide adequate treatment. *Id.* at *17, 23.

Like the plaintiffs in *Indiana Protection* and *Ruiz v. Estelle*, Mr. Sardakowski repeatedly engages in self-mutilation. Doc. 62 ¶¶ 84, 86, 106-07, 115-16, 131, 138. Like the defendants in *Indiana Protection*, CDOC staff respond by placing Mr. Sardakowski on "mental health watch," a form of segregation and observation. *Id.* at ¶¶ 131-32. He alleges that this further deprivation leads to escalation of his self-harming behaviors and ultimately his placement in four-point restraints. *Id.* at ¶¶ 116-19 (Mr. Sardakowski was held in restraints for ten days, four of which were spent in four-point restraints). While in four-point restraints, Defendants focus on "contracting for safety" (obtaining an agreement from Mr. Sardakowski that he will not harm himself), rather than providing

him treatment. *Id.* at ¶¶ 123, 125. Defendants then send Mr. Sardakowski back to solitary confinement, restarting the cycle of self-mutilation, observation, escalation, restraint, and contracting for safety. *Id.* at ¶¶ 129-38. While segregation and four-point restraints may temporarily prevent Mr. Sardakowski from harming himself, they do not constitute treatment—much less *adequate* treatment—for his underlying mental illness.

The caselaw is clear. When seriously mentally ill prisoners have decompensated to the point that they are repeatedly mutilating their bodies, serious psychiatric intervention is needed. *Indiana Protection*, 2012 WL 6738517, at *17. Given the seriousness of the medical need, evolving standards of decency require more than mere segregation and observation. *Ruiz v. Estelle*, 503 F. Supp. at 1339. The facts set forth above, accepted as true, demonstrate that Defendants have been deliberately indifferent to Mr. Sardakowski's mental health needs by failing to provide adequate treatment.

Prison officials also are deliberately indifferent when they prevent a prisoner from receiving treatment. *Sealock*, 218 F.3d at 1211. Courts have found that prison officials prevent treatment when they mischaracterize incidents of self-harm as malingering or punish inmates for exhibiting symptoms of mental illness. *See Ruiz v. Estelle*, 503 F. Supp. at 1334 ("[Prison] officials have often characterized [self-mutilation and suicide attempts] as attempts to 'manipulate the system' and have punished the suicide-prone inmates, rather than making provision for mental health professionals to counsel with or otherwise supervise them.").

In his Amended Complaint, Mr. Sardakowski alleges facts sufficient to demonstrate that Defendants have prevented him from receiving treatment for his serious mental illness.  First, he alleges that prison staff have mischaracterized his symptoms of mental illness as "malingering," despite an earlier evaluation establishing that his symptoms were genuine. Doc. 62 ¶ 34, 81. Second, Mr. Sardakowski alleges that Defendants have punished rather than treated his symptoms of mental

illness. In one instance, prison staff restrained him for being "disruptive" after he expressed a desire to commit suicide. *Id.* at ¶ 97. In another instance, they reported him for a rule violation after declaring a mental health emergency. *Id.* at ¶¶ 103-04. Mr. Sardakowski has alleged facts sufficient to demonstrate CDOC staff prevented him from receiving treatment, showing CDOC's disregard of his serious mental illness.

Defendants assert that Mr. Sardakowski simply disagrees with the correct course of treatment and that "such disagreement is insufficient as a matter of law to state a claim for deliberate indifference under the Eighth Amendment." Doc. 79 at 4. Mr. Sardakowski acknowledges that mere disagreement over the correct course of treatment does not establish an Eighth Amendment violation. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). However, not every challenge to the adequacy of treatment is a mere disagreement over the course of treatment. *Hunt*, 199 F.3d at 1224 (reversing district court's grant of a motion to dismiss, Tenth Circuit held that facts alleged by the plaintiff reflected more than "a mere disagreement with his medical treatment.").

In the same vein, Defendants point out that Plaintiff has had numerous visits with mental health staff, notations in his mental health record, various medications, and has participated in the Offenders with Mental Illness (OMI) program. Doc. 79 at 5. However, the provision of ongoing treatment does not establish that the treatment is adequate. *Halpin v. Simmons*, 33 F. App'x 961, 964 (10th Cir. 2002) ("The mere provision of continuing medical treatment, regardless of the adequacy of that treatment, does not foreclose a claim for deliberate indifference to medical needs."); *see also Hunt*, 199 F.3d at 1224 ("Nor does the fact that he has seen numerous doctors necessarily mean that he received treatment for serious medical needs, i.e., that treatment was prescribed at all or that prescribed treatment was provided.").

Finally, Defendants assert that plaintiff has merely alleged negligence. Doc. 79 at 5. However, knowledge and disregard of a serious medical need constitute a mental state more culpable than negligence—they establish deliberate indifference. *Self v. Crum*, 439 F.3d at 1231.

As set forth above, Mr. Sardakowski has alleged facts sufficient to state an Eighth Amendment claim for deliberate indifference to his serious medical need. Accordingly, Defendants' Motion to Dismiss should be denied as to Claim One.

**B. Mr. Sardakowski states a claim that Defendants violated the Eighth Amendment by placing and retaining him, a mentally ill prisoner, in solitary confinement.**

In Claim Two, Mr. Sardakowski alleges that Defendants have placed and retained him, a mentally ill prisoner, in prolonged solitary confinement in violation of the Eighth Amendment. Doc. 62 ¶¶ 170-80. As explained in greater detail below, he alleges that prolonged solitary confinement poses a substantial risk of serious harm to his mental health, and that Defendants have been and continue to be deliberately indifferent to this excessive risk to his health and safety.

As discussed in Claim One, the objective component of an Eighth Amendment claim requires the plaintiff to allege conditions of confinement that are "sufficiently serious." *Farmer*, 511 U.S. at 834. This test is met when conditions of confinement deprive a prisoner of basic life necessities, including "reasonable safety." *Helling*, 509 U.S. at 33; *Blay v. Reilly*, 241 F. App'x 520, 522 (10th Cir. 2007). "'[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.' . . . Contemporary standards of decency require no less." *Helling*, 509 U.S. at 32 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)).

It is well established that the Eighth Amendment protects against future harm to inmates' health. *Helling*, 509 U.S. at 33; *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). The Eighth

Amendment "does not require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic event'" before obtaining relief. *Farmer*, 511 U.S. at 845 (quoting *Helling*, 509 U.S. at 33); *see also Ramos*, 639 F.2d at 572 (prisoner need not wait until he is actually assaulted before obtaining relief); *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) ("There is no requirement that an inmate suffer serious medical problems before the condition is actionable.").

To trigger Eighth Amendment protection against future harm, the conditions of confinement must pose a "substantial risk of serious harm" to prisoners' health or safety. *Farmer*, 511 U.S. at 828, 837; *See also Helling*, 509 U.S. at 35. The risk must be objectively "unreasonable," and exposing prisoners to the risk must "violate[] contemporary standards of decency." *Helling*, 509 U.S. at 35-36.

As discussed in Claim One, the Tenth Circuit recognizes that the Eighth Amendment protects the mental health of prisoners as well as their physical health. *Ramos*, 639 F.2d at 574. Similarly, other courts have held that "[m]ental health, just as much as physical health, is a mainstay of life. Indeed, it is beyond any serious dispute that mental health is a need as essential to a meaningful human existence as other basic physical demands our bodies make for shelter, warmth or sanitation." *Madrid v. Gomez*, 889 F. Supp. 1146, 1261 (N.D. Cal. 1995). Accordingly, applying the *Helling* standard, the Eighth Amendment prohibits conditions that pose a substantial risk of serious harm to prisoners' *mental* health as well as their physical health. *Id.*

Indeed, courts have held that conditions posing a substantial risk of serious harm to a prisoner's mental health violate Eighth Amendment standards. In *Madrid v. Gomez*, the court found that "if the particular conditions of segregation being challenged are such that they inflict a serious mental illness, greatly exacerbate mental illness, or deprive inmates of their sanity, then defendants have deprived inmates of a basic necessity of human existence – indeed, they have crossed into the

realm of psychological torture." 889 F. Supp. at 1264. Applying the *Helling* risk standard, the court concluded that "subjecting individuals to conditions that are 'very likely' to render them psychotic or otherwise inflict a serious mental illness or seriously exacerbate an existing mental illness" violates the Eighth Amendment. *Id.* at 1266; *see also Indiana Protection*, 2012 WL 6738517, at *17, 23 (finding an Eighth Amendment violation where "severe conditions in the segregation units cause a predictable deterioration of the mental health of seriously mentally ill prisoners"); *Jones 'El v. Berge*, 164 F. Supp. 2d 1096, 1117-18, 1120-21 (W.D. Wis. 2001) (evidence that conditions posed risk of harm and caused actual harm to mental health supported issuance of preliminary injunction); *Ruiz v. Johnson*, 37 F. Supp. 2d 855, 914-15 (S.D. Tex. 1999), *rev'd on other grounds sub nom. Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001) (conditions posing "serious risks" to inmates' mental health violated the Eighth Amendment).

Courts have recognized that inmates with serious mental illness are particularly vulnerable to mental deterioration as a result of solitary confinement.[1] *Indiana Protection*, 2012 WL 6738517, at *15; *Jones 'El*, 164 F. Supp. 2d at 1118; *Ruiz v. Johnson*, 37 F. Supp. 2d at 911-12, 915; *Madrid*, 889 F. Supp. at 1265. Most recently, in *Indiana Protection*, the court found that social isolation, sensory deprivation, and enforced idleness exacerbate prisoners' symptoms of mental illness and lead to decompensation, causing serious damage that may be irreversible. 2012 WL 6738517, at *15-16 ("Decompensation lengthens the time needed for a mentally ill prisoner's cognitive and psychological functioning to be

---

[1] The conditions of solitary confinement vary somewhat from case to case, but all involve isolation and sensory deprivation. *Jones 'El*, 164 F. Supp. 2d at 1118 ("The almost total sensory deprivation . . . is relentless: inmates are kept confined alone in their cells for all but four hours a week. . . . The vestibule architecture and solid boxcar doors prevent any incidental interaction between inmates and guards."); *Ruiz v. Johnson*, 37 F. Supp. 2d at 908 ("Inmates' lives are virtually void of property, personal contact, and mental stimulus."); *Madrid*, 889 F. Supp. at 1229 ("[A]ll SHU inmates remain confined to their cells for 22 and ½ hours of each day. Food trays are passed through a narrow food port in the cell door. Inmates eat all meals in their cells. Opportunities for social interaction with other prisoners or vocational staff are essentially precluded.").

restored and in some instances there will be no full restoration."). In *Jones 'El v. Berge*, the court held that relentless sensory deprivation, constant illumination, solid cell doors that prevented interaction, and limited programming were "particularly damaging to inmates with serious mental illnesses." 164 F. Supp. 2d at 1118. In *Madrid v. Gomez*, the court found that placing mentally ill prisoners in solitary confinement was "the mental equivalent of putting an asthmatic in a place with little air to breathe." 889 F. Supp. at 1265.

Precisely because the risk of harm is so acute for prisoners with severe mental illness, courts in other circuits[2] have recognized that placing mentally ill prisoners in solitary confinement poses a substantial risk of serious harm to their mental health in violation of the Eighth Amendment. *Ruiz v. Johnson*, 37 F. Supp. 2d at 915; *Madrid*, 889 F. Supp. at 1265-66; *see also Jones 'El*, 164 F. Supp. 2d at 1120-21, 1125 (issuing a preliminary injunction ordering prison officials not to house mentally ill prisoners in solitary confinement). In *Madrid*, the court held that "[t]he risk is high enough, and the consequences serious enough, that we have no hesitancy in finding that the risk is plainly 'unreasonable.'" 889 F. Supp. at 1265 (quoting *Helling*, 509 U.S. at 35). The court concluded that subjecting mentally ill prisoners to solitary confinement could not "be squared with evolving standards of humanity or decency." *Id.* at 1266.

Here, Mr. Sardakowski has alleged facts sufficient to show that the conditions of solitary confinement to which he is being subjected pose a substantial risk of serious harm to his mental health, and have actually caused substantial mental injury during his placement in those conditions.

---

[2] In a case brought by a prisoner proceeding *pro se*, the Tenth Circuit held that conditions of solitary confinement are not, on their own, sufficiently serious enough to implicate the Eighth Amendment for prisoners in general. *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003) (unpublished). However, the decision does not address the particularly harmful effects of solitary confinement on prisoners with severe mental illness. It appears that the plaintiff alleged that he was mentally ill, 75 F. App'x at 717, but it is unclear to what extent, if any, he alleged specific facts to show that his conditions seriously harmed his mental health.

Specifically, Plaintiff has alleged that he suffered from mental illness before he was transferred to administrative segregation, and that his symptoms of mental illness have worsened while in solitary confinement. Doc. 62 ¶¶ 17, 21, 25, 47, 78, 83. The conditions of administrative segregation that Mr. Sardakowski alleges in his Amended Complaint parallel the conditions found unconstitutional in *Madrid*, *Jones 'El*, and *Ruiz. Id.* at ¶¶ 51-62. He asserts that these conditions have already severely exacerbated his symptoms of mental illness, as evidenced by his repeated and ongoing self-mutilation since he has been held in solitary confinement. *Id.* at ¶¶ 78, 106, 115-16, 138. These facts, taken as true, show that confining him in isolation has inflicted a level of mental suffering on Mr. Sardakowski that violates "evolving standards of humanity [and] decency." *See Madrid*, 889 F. Supp. at 1266. Mr. Sardakowski has alleged facts sufficient to meet the objective component of an Eighth Amendment claim.

Defendants mischaracterize this claim as seeking a particular classification or placement in a particular facility. Doc. 79 at 6. Mr. Sardakowski simply seeks placement in conditions that meet Eighth Amendment standards. His conditions of confinement—wherever he is housed and whatever his classification—must meet minimum constitutional requirements. *See Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) ("Although prison officials have broad administrative and discretionary authority to manage and control prisons, they must provide humane conditions of confinement guided by 'contemporary standards of decency'") (quoting *Estelle,* 429 U.S. at 103). As set forth above, Mr. Sardakowski has alleged facts sufficient to state a claim that, given his severe mental illness, solitary confinement poses a substantial risk of serious harm to his mental health in violation of Eighth Amendment standards.

In their Motion to Dismiss, Defendants do not appear to challenge the subjective prong of Mr. Sardakowski's second Eighth Amendment claim (Claim Two). *See* Doc. 79 at 6-8. Nevertheless,

he addresses the subjective prong here to show that he has alleged facts sufficient to state an Eighth Amendment claim.

As discussed in Claim One, the subjective prong requires the plaintiff to show that prison officials acted with "deliberate indifference." *Estelle*, 429 U.S. at 104. The subjective test is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1285 (10th Cir. 1999).

"[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842; *Self v. Crum*, 439 F.3d at 1231. A plaintiff may show actual knowledge of the risk by alleging facts sufficient to demonstrate that the risk "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842-43. As discussed above, the court in *Blackmon* held that a fact-finder could conclude that prison officials "must have known about" a substantial risk of serious harm to mental health because they were aware that the plaintiff "continued to self-harm, verbalize suicidal intentions and exhibit signs of severe mental illness, which was so severe that he was hospitalized." 2012 WL 2512722, at *19 (D. Kan. June 29, 2012).

Mr. Sardakowski has alleged facts sufficient to show that Defendants were and are aware of the substantial risk of serious harm to his mental health posed by continuing to hold him in isolation. First, Mr. Sardakowski asserts in his Amended Complaint that CDOC staff knew he was mentally ill before and after his placement in solitary confinement. Doc. 62 ¶¶ 21, 25, 47, 78. He also cites to CDOC records throughout his incarceration that contain information about his history of mental illness and multiple diagnoses of mental illness. *Id.* at ¶¶ 17, 21.

16

Second, Mr. Sardakowski asserts that CDOC staff knew of the risk that administrative segregation would seriously harm his mental health. *Id.* at ¶ 67 ("CDOC officials have known and continue to know that conditions of solitary confinement at CSP exacerbate symptoms of mental illness."). Additionally, the profoundly harmful psychological effects of solitary confinement on mentally ill prisoners are well-documented in numerous court cases. *Id.* at ¶ 66. As one court put it, concluding that "prolonged isolation from social and environmental stimulation increases the risk of developing mental illness does not strike this Court as rocket science." *McClary v. Kelly*, 4 F. Supp. 2d 195, 208 (W.D.N.Y. 1998).

Finally, Plaintiff asserts that after putting him in administrative segregation, CDOC staff knew that solitary confinement was causing him serious mental deterioration. *Id.* at ¶¶ 78, 86, 113, 115-16. Plaintiff's mental deterioration was obvious and well-documented in CDOC records. *Id.* at ¶ 78, 94, 105, 110. CDOC records report numerous incidents of self-injury, in some cases requiring hospitalization or transfer to a prison infirmary. *Id.* at ¶¶ 84, 86, 106-07, 115-29, 138. Additionally, while Mr. Sardakowski was in "four-point" restraints in the infirmary, he told CDOC staff that he was powerless to control his self-injurious behaviors in solitary confinement—a fact that staff documented in his mental health file. *Id.* at ¶¶ 126-27, 135. Mr. Sardakowski also alleges that CDOC's own psychiatrist recommended that he be transferred out of solitary confinement. *Id.* at ¶ 128. These facts, taken as true, show that Defendants were aware of the harmful effects of solitary confinement on mentally ill prisoners, and on Mr. Sardakowski in particular.

In addition to alleging knowledge of the risk of harm, the plaintiff also must allege facts to show that prison officials disregarded the risk. *Farmer*, 511 U.S. at 837. Courts addressing this type of claim have held that prison officials disregarded the risk of harm by placing mentally ill prisoners in solitary confinement, or failing to remove them from solitary confinement once they were there.

*Madrid*, 889 F. Supp. at 1267; *Jones 'El*, 164 F. Supp. 2d at 1121 ("Defendants' burden is to demonstrate that they took reasonable steps to keep seriously mentally ill inmates from being transferred to Supermax and to transfer out any inmates who develop serious mental illnesses after their transfer there.").

Plaintiff asserts that despite Defendants' knowledge of the risk of harm to Mr. Sardakowski's mental health, CDOC staff disregarded the risk by placing him and retaining him in solitary confinement. Doc. 62 ¶¶ 47, 50. He alleges that despite their awareness that solitary confinement has severely exacerbated his mental illness—and against their own psychiatrist's recommendation—CDOC staff have refused to remove him from solitary confinement. *Id.* at ¶¶ 99, 111, 128-29, 139. Even when Mr. Sardakowski's self-harm escalated to the point of requiring temporary transfer to a prison infirmary, he alleges that CDOC staff ignored his pleas that he was "powerless to stop his behaviors of self-injury" in solitary confinement; instead, they repeatedly sent him directly from the infirmary back to solitary confinement. *Id.* at ¶¶ 129, 136-37. Mr. Sardakowski remains in solitary confinement. *Id.* at ¶ 139. These facts, taken as true, establish that Defendants have disregarded the risk of harm to Mr. Sardakowski.

Because Mr. Sardakowski alleges facts sufficient to show that Defendants were aware of the risk of harm to him by continuing to hold him in solitary confinement, and also that they disregarded that risk, Mr. Sardakowski has adequately alleged that Defendants were deliberately indifferent to the substantial risk of serious harm to his mental health. Defendants' Motion to Dismiss should be denied as to Claim Two.

## III.    ADA and Rehabilitation Act Claims

Mr. Sardakowski has alleged sufficient facts to state a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, (Claim Three) and § 504 of the Rehabilitation Act, 29

U.S.C. § 794, (Claim Four). As discussed below, he alleges that CDOC has discriminated against him on the basis of his mental illness and developmental disability by failing to provide him with reasonable accommodations that would enable him to progress out of solitary confinement. Doc. 62 ¶¶ 181-203.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

The Rehabilitation Act prohibits discrimination by recipients of federal financial assistance. 29 U.S.C. § 794. "As a general matter, courts have construed the Rehabilitation Act and the Disability Act similarly. Further, Congress has indicated that the Disability Act should be interpreted in a manner consistent with the Rehabilitation Act. In particular, cases considering the applicability of the statutes to prisons have treated the two together." *Montez v. Romer*, 32 F. Supp. 2d 1235, 1239 (D. Colo. 1999) (citations omitted).

### A.  Plaintiff Has a Disability Within the Meaning of the ADA and RA.

In the context of the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1). The regulations implementing Title II of the ADA state that a physical or mental impairment includes "[a]ny mental

or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 28 C.F.R. § 35.104(1)(i)(B). "[M]ajor life activities include, but are not limited to…learning, reading, concentrating, thinking…" 42 U.S.C. § 12102 (2)(A).

Mr. Sardakowski has alleged in his Amended Complaint that he has a mental illness that substantially limits a number of major life activities, including learning, concentrating, and thinking. Doc. 62 ¶¶ 5, 21, 182. He also alleges that he has a record of mental illness and a developmental disability, *Id.* at ¶ 21 (Mr. Sardakowski's CDOC mental health record contains diagnoses of a number of mental health disorders), ¶ 22 ("Mr. Sardakowski's CDOC mental health record indicates that he has a developmental disability"), ¶ 39 (mental health staff noted that Mr. Sardakowski's classification scores indicated that he had a developmental disability). Additionally, he alleges that he is regarded as having a mental illness and developmental disability, *Id.* at ¶¶ 23-24 (sentencing judge recommended that Mr. Sardakowski be placed at San Carlos, a facility for "mental health special need male offenders"), ¶ 30 (Mr. Sardakowski participated in a program for developmentally disabled inmates), ¶ 36 ("Mr. Sardakowski was transferred to Fort Lyon Correctional Facility, a facility that housed mentally ill prisoners in need of constant care"). Finally, Defendants do not appear to dispute in their Motion to Dismiss that Mr. Sardakowski has a disability within the meaning of the ADA and RA. *See* Doc. 79 at 8-10.

### B. Plaintiff is "Qualified" Within the Meaning of the ADA and RA.

Additionally, Mr. Sardakowski has properly alleged that he is a qualified individual with a disability. Doc. 62 ¶¶ 1, 15, 63, 70, 192. Defendants also do not appear to dispute this element in their Motion to Dismiss. *See* Doc. 79 at 8-10. Mr. Sardakowski is an inmate at CDOC who, with reasonable modifications, would meet the essential eligibility requirements for participation in prison programs, services and activities. *See* 42 U.S.C. § 12131(2) (defining "qualified individual").

**C. Defendants have discriminated against Mr. Sardakowski on the basis of his disability.**

The third element of a claim of discrimination under the ADA/RA requires the plaintiff to show that the "exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson*, 500 F.3d at 1193. Here, Mr. Sardakowski alleges that Defendants have discriminated against him by segregating him based on his disability, denying him benefits and services, providing him benefits and services that are not equal to those afforded others, and refusing to make reasonable modifications to their policies to avoid discrimination. *See, e.g.*, 28 C.F.R. § 35.130(b)(1)(i), (ii), (b)(7) & (d); *see also Alexander v. Choate*, 469 U.S. 287, 301 (1985) (Discrimination under the RA can consist of a denial of a reasonable accommodation).[3]

Specifically, under the ADA and RA, it is discriminatory to "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1)(iii).  Here, Plaintiff alleges that Defendants have discriminated against him because other prisoners without Mr. Sardakowski's disabilities have the opportunity to progress out of solitary confinement through CDOC's leveling-out programs; however, these programs are not as effective in affording an equal opportunity for Mr. Sardakowski to progress out of solitary confinement because his mental illness prevents him from meeting the behavior-based goals required for each program. Doc. 62 ¶¶ 65, 74, 75, 192.

Defendants argue that Mr. Sardakowski does not claim he has been treated differently from any other inmate and therefore that prison officials have not discriminated against him because the ADA does not create greater rights for disabled prisoners than for non-disabled prisoners. Doc. 79

---

[3] The Tenth Circuit has used "reasonable accommodation" and "reasonable modifications" interchangeably. *Robertson*, 500 F.3d at 1195 n. 8.

at 9-10.  This argument represents a fundamental misunderstanding of the law of disability

discrimination in general, and the reasonable accommodation mandate in particular.  Under the

disability rights statutes, disparate treatment is not the only way to show discrimination.[4]  "The ADA

requires more than physical access to public entities: it requires public entities to provide '*meaningful*

access' to their programs and services" through the provision of "reasonable modifications in

policies, practices, or procedures" where such modifications "are necessary to avoid discrimination

on the basis of disability." *Robertson* 500 F.3d at 1195 (emphasis in original) (citation omitted). For

example, an individual who uses a wheelchair may have "access" to a building with a step at the

entrance because it is open to the public, but if there is no wheelchair ramp then that individual does

not have *meaningful* access.

For that reason, the regulations implementing the disability rights statutes expressly

recognize that failure to provide reasonable modifications to policies and practices also constitutes

discrimination, especially where such failure operates to deny "a qualified individual with a disability

the opportunity to participate in or benefit from the aid, benefit or service." 28 C.F.R. §

35.130(b)(1)(i); 28 C.F.R. § 35.130(b)(7); *see also Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226,

1244 (D. Colo. 2009) ("[P]laintiff may prove a violation of Title II by demonstrating that a public

entity failed to make 'reasonable modifications' allowing the individual to partake in services,

programs, or activities offered by the public entity." (footnote omitted) (citation omitted)); *Ulibarri v.*

---

[4] In *Tenbrink v. Federal Home Loan Bank*, the court described part of the purpose of the ADA:
   In its findings, Congress concluded that 'historically, society has tended to isolate and segregate
   individuals with disabilities, and, despite some improvements, such forms of discrimination against
   individuals with disabilities continue to be a serious and pervasive social problem.' 42 U.S.C. §
   12101(a)(2). Congress also found that 'individuals with disabilities continually encounter various
   forms of discrimination' 42 U.S.C. § 12101(a)(5). One of the purposes of the ADA was 'to provide a
   clear and comprehensive national mandate for the elimination of discrimination against individuals
   with disabilities.' 42 U.S.C. § 12101(b)(1).
920 F. Supp. 1156, 1160 (D. Kan. 1996).

*City & County of Denver*, 742 F. Supp. 2d 1192, 1214 (D. Colo. 2010) ("There is no dispute that disabled individuals are entitled to reasonable accommodations during detention or incarceration").

Here, although Defendants have given Mr. Sardakowski access to the "leveling out" programs in the past, Mr. Sardakowski alleges that he has not been given *meaningful* access. Specifically, he alleges that while he has been placed in the leveling-out programs, he has not had the same opportunity to complete them because his mental illness prevents him from meeting the requirements. Doc. 62 ¶¶ 65, 70, 74, 76. He alleges that absent reasonable modifications, he has no hope of successfully completing these leveling-out programs and is thereby denied *meaningful* access to them. *Id.* at ¶¶ 65, 70.

Defendants argue that any inmate, whether he is disabled or not, is subject to removal from OMI, and therefore Mr. Sardakowski has not been discriminated against because he has no right to continued placement in the program after a rules violation. Doc. 79 at 10. However, as set forth in his Amended Complaint, Mr. Sardakowski's rules violations stem from disruptive behaviors that are manifestations of symptoms of his mental illness. Doc. 62 ¶ 71. As the Tenth Circuit has recognized, "the ADA's anti-discrimination provision 'does not contemplate a stark dichotomy between "disability" and "disability-caused misconduct," but rather protects both.'" *McKenzie v. Dovala*, 242 F.3d 967, 974 (10th Cir. 2001); *see also Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 609 (10th Cir. 1998) ("the ADA protects both the disability and the conduct caused by the disability"). Thus, the denial of the opportunity to participate in or benefit from programs and services based on behaviors caused by a disability constitutes discrimination.

Finally, Defendants mischaracterize Mr. Sardakowski's claim as a challenge to the medical treatment of his underlying disability. Doc. 79 at 8. This portrayal confuses Mr. Sardakowski's Eighth Amendment Claim regarding inadequate treatment (Claim One) with his claims of disability

discrimination (Claims Three and Four).  Mr. Sardakowski is not challenging his medical treatment in his ADA and RA claims. These claims seek reasonable modifications that would allow him equal access to the programs provided to other inmates so that he will have an equal opportunity to progress out of solitary confinement. Doc. 62 ¶¶ 4, 65, 76, 155, 157, 159. Such claims are actionable under the ADA and RA. *United States v. Georgia*, 546 U.S. 151, 157 (2006) ("deliberate refusal of prison officials to accommodate [an inmate's] disability-related needs in such fundamentals as . . . medical care, and virtually all other prison programs constitute[s] 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'"). Because Mr. Sardakowski has alleged sufficient facts to state claims for discrimination under the ADA and RA, Defendants' Motion to Dismiss should be denied as to Claim Three and Claim Four.

## IV.    Declaratory and injunctive relief may be granted if Mr. Sardakowski prevails on his claims.

Finally, Defendants assert that Mr. Sardakowski is not entitled to seek declaratory or injunctive relief. Doc. 79 at 11-12. They argue that he has failed to allege facts to support his claim, that he is merely seeking a declaration that he was wronged, and that he has not demonstrated a good chance of being injured by Defendants in the future. Each of these assertions is incorrect.

As set forth above, Mr. Sardakowski has alleged facts sufficient to state claims for violations of the Eighth Amendment, ADA and Rehabilitation Act. He is entitled to seek declaratory and injunctive relief if he prevails on his claims. In a civil rights case, a declaratory judgment may be appropriate in addition to injunctive relief. *See, e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 76 (2005) (state prisoners may challenge state parole procedures and seek declaratory and injunctive relief under 42 U.S.C. § 1983); *Skinner v. Uphoff*, 234 F. Supp. 2d 1208, 1217 (D. Wyo. 2002) (Plaintiff was granted declaratory and injunctive relief upon showing of Eighth Amendment violations). Declaratory and

injurious relief are appropriate where a constitutional violation has occurred and there is a reasonable expectation that the violation will continue or recur. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000) (Plaintiff sought declaratory and injunctive relief for violations of the Clean Water Act; court held that a defendant raising mootness of "a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.").

Defendants assert that Mr. Sardakowski may not seek declaratory or injunctive relief because he has not demonstrated a good chance of being injured in the future. Doc. 79 at 12. This is a mootness argument, and Defendants cite two cases in which the plaintiffs' claims were appropriately dismissed as moot because changes in their circumstances left them without a "legally cognizable interest in the outcome of adjudication." *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004). In *Barney v. Pulsipher*, prisoners' claims were dismissed after they were released from incarceration. 143 F.3d 1299, 1306 n.3 (10th Cir. 1998). In *Bauchman v. West High School*, a student's claims were dismissed as moot after the student graduated. 132 F.3d 542, 548-49 (10th Cir. 1997). Unlike the plaintiffs in those cases, Mr. Sardakowski is currently incarcerated in CDOC, and will likely remain incarcerated for a number of years. *See* Doc. 62 ¶ 23 (Plaintiff was sentenced to 18 years in prison in 2006).

Defendants also assert that "Plaintiff admits to receiving the treatment to which he is entitled." Doc. 79 at 12. Mr. Sardakowski has made no such admission. As set forth above in the discussion of Claim One, he alleges that prison officials have denied him adequate treatment for his mental illness in violation of the Eighth Amendment.

Mr. Sardakowski has stated claims for violations of the Eighth Amendment, the ADA, and

the Rehabilitation Act. If Mr. Sardakowski prevails on these claims, he will be entitled to seek

declaratory and injunctive relief.

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that this Court deny

Defendants' Motion to Dismiss.

Dated: February 25, 2013

Respectfully submitted,

STUDENT LAW OFFICE

s/ Laura Rovner
Laura Rovner
Mary Dewey, Student Attorney
Amanda Essex, Student Attorney
Donald Kaade, Student Attorney
University of Denver Sturm College of Law
2255 E. Evans Ave., Suite 335
Denver, CO 80208
Telephone: 303.871.6140
Fax: 303.871.6847
E-mail: lrovner@law.du.edu
Counsel for Plaintiff

### CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on February 25, 2013, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to the following addresses:

Chris Alber, Assistant Attorney General
chris.alber@state.co.us

Lisa Amatangel, Assistant Attorney General
lisa.amatangel@state.co.us


s/ Laura L. Rovner
Laura L. Rovner