IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01326-RBJ-KLM

JAMES SARDAKOWSKI,

      Plaintiff,

v.

TOM CLEMENTS, in his official capacity as Director of Colorado Department of Corrections,
JOANIE SHOEMAKER, in her official capacity as Deputy Director of Prisons, Clinical Services for Colorado Department of Corrections,
PAULA FRANTZ, in her official capacity as Chief Medical Officer for Colorado Department of Corrections,
TRAVIS TRANI, in his official capacity as Warden of Colorado State Penitentiary,
JAMES MICHAUD, in his official capacity as Mental Health Program Administrator for Colorado Department of Corrections,
JILL LAMPELA, in her official capacity as Behavior Health Supervisor for Colorado State Penitentiary, and
STATE OF COLORADO DEPARTMENT OF CORRECTIONS,

      Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

### ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's Amended Complaint** [Docket No. 79; Filed February 4, 2013] (the "Motion"). The Motion is referred to this Court for recommendation [#80]. On February 25, 2013, Plaintiff filed a Response [#85]. On March 11, 2013, Defendants filed a Reply [#90]. The Court has reviewed the briefing, the case file, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court respectfully **recommends** that Plaintiff's claims for retrospective declaratory relief be **dismissed without prejudice** and

the Motion [#79] be **DENIED**.

## I. Background

Plaintiff is a state prisoner who has been in the custody of the Colorado Department of Corrections ("CDOC") since September 2006. *Am. Compl.* [#62] at 2. Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 on May 21, 2012 [#1]. On November 19, 2012, Plaintiff filed his Amended Complaint [#62]. In short, he brings four claims regarding his conditions of confinement and mental health treatment by CDOC personnel. *Am. Compl.* [#62] at 28-35.

Plaintiff alleges that he suffers from severe mental illness which includes a developmental disability. *Id.* at 2. He is presently incarcerated at Colorado State Penitentiary ("CSP") and is housed in administrative segregation, *i.e.*, solitary confinement. *Id.* He alleges that since the initiation of his incarceration, he has been denied adequate mental health treatment, including in part the denial of appropriate and necessary medication. *Id.* Because of this alleged denial, Plaintiff "has engaged and continues to engage in escalating self-injurious behaviors including multiple attempts at castration and suicide." *Id.* He avers that his mental health has deteriorated, and continues to do so, because of Defendants' inadequate mental health treatment. *Id.* Plaintiff asserts that CDOC psychiatrists have explicitly recommended that Plaintiff be transferred to an appropriate facility because prolonged isolation is exacerbating the symptoms of his severe mental illness. *Id.* Plaintiff also avers that Defendants have discriminated against him on the basis of his mental illness by failing to provide him with reasonable accommodations that would enable him to progress out of administration segregation. *Id.*

In connection with these underlying events, Plaintiff asserts four claims against Defendants: (1) failure to provide adequate mental health treatment in violation of Plaintiff's right to be free from cruel and unusual punishment pursuant to the Eighth Amendment; (2) placement and retainment of Plaintiff in administrative segregation in violation of his right to be free from cruel and unusual punishment, because of his mental illness; (3) discrimination against Plaintiff on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; and (4) discrimination against Plaintiff on the basis of his disability in violation of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794. *Id.* at 28-35.

Aside from attorney fees and costs of this action, Plaintiff only seeks declaratory and injunctive relief. *Am. Compl.* [#62] at 36. He seeks declarations that he "has been and is being deprived by Defendants of his right to be free" (1) "from cruel and unusual punishment in violation and contravention of the Eighth Amendment to the United States Constitution;" and (2) "from discrimination on the basis of disability in violation of the [ADA] and the [RA] by Defendants' exclusion and segregation of him on the basis of his disability and refusal to make reasonable modifications to policies, practices and procedures necessary to avoid such discrimination." *Id.* He further seeks injunctions requiring Defendants to comply with the Eighth Amendment, the ADA, and the RA. *Id.* Regarding the Eighth Amendment, Plaintiff wants: (1) an "evaluation of [Plaintiff's] mental health and level of intellectual functioning by an independent mental health professional;" (2) "proper treatment of [Plaintiff's] mental illness and developmental disability;" (3) "proper medications to accommodate his mental health disabilities and prevent self-harm;" and (4) "transfer out of administrative segregation to an appropriate facility." *Id.* Regarding the

ADA and the RA, Plaintiff seeks: (1) "reasonable accommodations to ensure that he has a meaningful opportunity to progress out of administrative segregation;" and (2) "reasonable modifications to rules, polices, and practices in CSP leveling out programs to provide Plaintiff with equal opportunity to progress out of administrative segregation." *Id.* at 36-37.

Defendants seek dismissal of Plaintiff's entire lawsuit. *Motion* [#79]. First, they assert that Plaintiff fails to state a cognizable Eighth Amendment claim because he has not alleged facts relating to the subjective component of deliberate indifference, because failing to provide a particular course of medical treatment is not an Eighth Amendment violation, and because Plaintiff has no constitutional right to a particular facility, classification or program. *Id.* at 3-8. Second, Defendants assert that Plaintiff does not allege disparate treatment and therefore fails to state a claim for relief pursuant to the ADA or the RA. *Id.* at 8-10. Third, they argue that Plaintiff's requests for declaratory and injunctive relief should be denied. *Id.* at 10-12.

## II.  Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised *sua sponte* by the court at any point in the proceeding. *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3). A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a

complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it. Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.    Fed. R. Civ. P. 12(b)(6)**

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

The Court must construe the filings of a *pro se* litigant liberally. *See Haines v.*

-6-

*Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  Despite this relaxed pleading standard, a *pro se* plaintiff retains "the burden of alleging sufficient facts on which a recognizable legal claim could be based." *Hall*, 935 F.2d at 1110.  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980); *accord Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994).  Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in

-7-

the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citing *Townsend v. Sain*, 372 U.S. 293, 318 (1963)).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

### III.  Analysis

#### A.    Subject Matter Jurisdiction

Defendants do not raise a subject matter jurisdiction argument pursuant to Rule 12(b)(1) in the Motions.  However, the Court must consider the question *sua sponte* when it comes to the Court's attention that the Court may lack jurisdiction over a matter. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009).  Accordingly, the Court first considers whether it has subject matter jurisdiction over Plaintiff's requests for declaratory relief.[1] *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-00050, 2012 WL 959405, at *3 (D. Colo. March 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "validly confer[s] jurisdiction on federal courts to issue declaratory judgments in appropriate cases." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998).  The DJA explicitly incorporates the case or controversy requirement of the Constitution by stating: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and

---

[1] Although Defendants argue that Plaintiff is not entitled to declaratory relief, they do so in a Rule 12(b)(6) context and not pursuant to Rule 12(b)(1), as the Court must first do here.  *See Motion* [#79] at 10-12.

other legal relations of any interested party seeking such declaration." 28 U.S.C. §
2201(a). The Court therefore considers the issue of jurisdiction pursuant to Rule 12(b)(1)
with respect to Plaintiff's requests for declaratory judgment. *See, e.g.*, *Van Deelen v.
Fairchild*, No. 05-2017, 2005 WL 3263885, at *7 (D . Kan. Dec. 1, 2005).

"Where a plaintiff seeks both an injunction and declaratory relief, the district court
has a duty to decide the appropriateness and the merits of the declaratory request
irrespective of its conclusion as to the propriety of the issuance of an injunction." *Jordan
v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (internal quotations omitted) (quoting *Super
Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)). "It is well established that what
makes a declaratory judgment action a proper judicial resolution of a case or controversy
rather than an advisory opinion is the settling of some dispute which affects the behavior
of the defendant toward the plaintiff." *Id.* (citations omitted). In other words, "where a
plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief
that, if granted, would affect the behavior of the particular parties listed in his complaint."
*Id.*

To establish that a case or controversy exists, Plaintiff must demonstrate that the
controversy is: (1) definite, concrete, and touches on the legal relations of the parties, and
(2) sufficiently immediate and real. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41
(1937); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In short, "[t]he
ultimate question is whether declaratory relief will have some effect in the real world." *Van
Deelen*, 2005 WL 3263885, at *7 (citing *Citizens for Responsible Gov't State Political Action
Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)). The mere fact that Plaintiff's
requested relief would give Plaintiff the satisfaction that he was wronged in the past does

not create an actual, live controversy.  *Id.* (citing *Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997) (holding that the case or controversy requirement was not met because the plaintiff's requested declaratory relief was moot)).  Further, "[e]ven if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the propriety of declaratory judgment[.]"  *Id.* (citing *Exec. Risk Indem. Inc. v. Sprint Corp.*, 282 F. Supp. 2d 1196, 1202 (D. Kan. 2003)).

Plaintiff seeks a declaratory judgment that he "has been and is being deprived by Defendants of his right to be free" (1) "from cruel and unusual punishment in violation and contravention of the Eighth Amendment to the United States Constitution;" and (2) "from discrimination on the basis of disability in violation of the [ADA] and the [RA] by Defendants' exclusion and segregation of him on the basis of his disability and refusal to make reasonable modifications to policies, practices and procedures necessary to avoid such discrimination."  *Am. Compl.* [#62] at 36.  Thus, in part, Plaintiff seeks a declaration that his constitutional rights were violated and that Defendants have discriminated against him. However, even if the Court were to grant his request, the declaratory judgment would not "affect[] the behavior of [D]efendant[s] toward [P]laintiff," because Defendants would not be required to take any course of action.  *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). In other words, Plaintiff is seeking a retrospective opinion that these Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment.  *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that

-10-

a person was wronged.").

Plaintiff seeks a declaration that Defendants violated his rights in the past:

> Even if [P]laintiff demonstrated past constitutional violations, the relief would do nothing more than give [P]laintiff the satisfaction of a declaration that in the past, [D]efendants wronged him. Retrospective declaratory relief would not impact the present or future legal relations of the parties. In this instance, declaratory relief would be hollow and fruitless.

*Van Deelen*, 2005 WL 3263885, at *8.  Thus, because there is no case or controversy with regard to this part of Plaintiff's requested declaratory relief, the Court finds that Plaintiff's requests for declaratory relief against these Defendants should be dismissed for lack of subject matter jurisdiction to the extent that they seek a retrospective declaration that Plaintiff's rights were violated in the past.[2]

Accordingly, the Court respectfully **recommends** that Plaintiff's requests for retrospective declaratory relief against all Defendants be **dismissed without prejudice** for lack of subject matter jurisdiction.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006).

## B.    Claims One and Two: Eighth Amendment

Defendants move to dismiss Plaintiff's Eighth Amendment claims for cruel and unusual punishment arising from Defendants' treatment of Plaintiff regarding his mental health.  *Motion* [#79] at 3-8.  The first claim is based on Defendants' alleged deliberate indifference to providing Plaintiff with adequate mental health treatment.  *Am. Compl.* [#62] at 28-29.  The second claim is based on the alleged exacerbation of Plaintiff's mental

---

[2]  In the interest of clarity, the Court notes that it is not recommending dismissal of Plaintiff's requests for declaratory judgment that seek declarations that Plaintiff's rights are currently being violated by Defendants or of the injunctive relief that relates to such declarations.

illness due to his extended stay in administrative segregation.  *Id.* at 29-31.

### 1.    Inadequate Mental Health Treatment

The Eighth Amendment protects against prison officials' "deliberate indifference to serious medical needs of prisoners" if that indifference "constitutes the unnecessary and wanton infliction of pain."  *Anderson v. Colo., Dep't of Corrs.*, 848 F. Supp. 2d 1291, 1299 (D. Colo. Mar. 26, 2012) (quoting *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)).  To survive a motion to dismiss a deliberate indifference claim, Plaintiff must both objectively demonstrate that his medical need is sufficiently serious as well as subjectively show that Defendants "knew of and disregarded an excessive risk to inmate health and safety." *Anderson*, 848 F. Supp. 2d at 1299 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Defendants do not argue that Plaintiff fails to meet the objective component of this test. *See Reply* [#90] at 2-7; *see also Response* [385] at 6.  Thus, the Court examines only whether Plaintiff has failed to sufficiently allege the subjective component of his deliberate indifference claim.

To support a favorable finding on this aspect of a deliberate indifference claim, Plaintiff must provide allegations that Defendants were both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that they actually drew that inference.  *Anderson*, 848 F. Supp. 2d at 1299 (quoting *Farmer*, 511 U.S. at 834).  Serious harm means a "lifelong handicap, permanent loss, or considerable pain." *Anderson*, 848 F. Supp. 2d at 1299 (quoting *Garrett v. Stratman*, 254 F.3d 946, 949-50 (10th Cir. 2001)).  There is no argument that prison officials had actual knowledge of

Plaintiff's serious medical need.[3]  *Motion* [#79] at 4-5; *see also Response* [#85] at 7.

In part, Plaintiff alleges that prison officials failed to follow the recommendation of CDOC mental health staff to transfer Plaintiff to an appropriate facility, that they have denied him appropriate and necessary medication, and that this failure has lead to Plaintiff's continued suicide attempts and self-injurious behavior.  *Am. Compl.* [#62] at 2, 29.  Defendants are correct that "a difference in medical judgment is not sufficient to establish an Eighth Amendment violation."  *Anderson*, 848 F. Supp. 2d at 1299 (citing *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (stating that "[t]he prisoner's right is to medical care–not to the type or scope of medical care which he personally desires"));  *Motion* [#79] at 4-5.  "However, that does not foreclose the possibility that medical or mental health treatment will be so inadequate that it will rise to the level of an Eighth Amendment violation."  *Anderson*, 848 F. Supp. 2d at 1299.  Based on these allegations of Defendants' deliberate indifference to Plaintiff's mental health issues, along with a thorough review of the Amended Complaint, the Court finds that Plaintiff's deliberate indifference Eighth Amendment claim should not be dismissed as a matter of law at this stage of the proceedings.  Accordingly, the Court **recommends** that Defendants' Motion

---

[3]  Defendants for the first time assert in the Reply that Plaintiff did not allege facts suggesting that any specific Defendant was exposed to information concerning any risk to Plaintiff.  *Reply* [#90] at 3.  Generally, the Court does not address an issue raised for the first time in a reply brief.  *Boone v. Carlsbad Bancorporation*, 972 F.2d 1545, 1554 n.6 (10th Cir. 1992).  The Court therefore does not address this aspect of Defendants' argument. However, the Court notes, without deciding, that careful review of the Amended Complaint appears to sufficiently allege that each Defendant knew something about Plaintiff's mental illness and treatment, even though the extent of knowledge held by each person is unclear.  This question would be sufficient to survive a motion to dismiss at this early stage of the litigation.  *See, e.g.*, *Edwards v. Farmers Ins. Co.*, No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *8 (N.D. Okla. Nov. 24, 2009) (holding that motion to dismiss should be denied and that discovery was warranted where the plaintiff sufficiently alleged that the defendant engaged in wrongful activities and conduct but where the precise role played by the defendant was unclear).

to Dismiss this claim be **denied**.

      **2.**    **Administrative Segregation**

Defendants move to dismiss Plaintiff's second Eighth Amendment claim based on the conditions of his confinement.  *Motion* [#79] at 6-8.  Plaintiff asserts that his "indefinite isolation in solitary confinement has exacerbated his preexisting mental illnesses and has led to the significant deterioration of his mental health."  *Am. Compl.* [#62] at 30.  Plaintiff states that his "self-harming behavior has noticeably escalated over the period of time he has been in isolation . . . as the nature of his acts has become more aggressive and their frequency has increased."  *Id.* at 31.

In order to show that the conditions of Plaintiff's confinement constitute cruel and unusual punishment pursuant to the Eighth Amendment, Plaintiff must demonstrate an objective and a subjective component.  *Anderson*, 848 F. Supp. 2d at 1295.  Objectively, the prison deprivation must be sufficiently serious, such as "denying the minimal civilized measure of life necessities."  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298-304 (1991)).  Subjectively, the prison officials must have acted with a culpable state of mind, such as "some form of wanton conduct at least amounting to deliberate indifference as compared to inadvertence or good faith error."  *Anderson*, 848 F. Supp. 2d at 1295 (citing *Wilson*, 501 U.S. at 298-304).

Regarding the objective component, Plaintiff has alleged that his prolonged isolation is causing the further deterioration of his mental health and a significant increase in physical self-injury and suicide attempts.  *See, e.g.*, *Am. Compl.* [#62] at 30-31.  These allegations clearly demonstrate conditions that put Plaintiff's life in danger.  Subjectively,

Plaintiff has alleged that prison officials are aware of "the substantial risk that prolonged isolation would exacerbate [Plaintiff's] mental illness and lead to severe deterioration of his mental health," that they "ignored that risk by placing and retaining [Plaintiff] in solitary confinement," and that they know of Plaintiff's self-harming and suicidal behavior. *See, e.g.*, *id.* The Court finds that these allegations are sufficient to meet the threshold to withstand a motion to dismiss this conditions of confinement claim at this early stage of the case. *See, e.g.*, *Ruiz v. Estelle*, 503 F. Supp. 1265, 1339 (S.D. Tex. 1980), *aff'd in part and rev'd in part*, 679 F.2d 1115 (5th Cir. 1982). Accordingly, the Court **recommends** that Defendants' Motion to Dismiss this claim be **denied**.

**C.     Claims Three and Four: ADA and RA**

Both the ADA and the RA prohibit discrimination by public entities on the basis of disability. *Anderson*, 848 F. Supp. 2d at 1300. They are materially identical, and the elements to state a claim under each are the same except that the defendant must receive federal funds to be liable under the RA. *Id.* at 1300 n.2 (citing *Crawford v. Ind. Dep't of Corrs.*, 115 F.3d 481, 483 (7th Cir. 1997)). To state a claim under either act, the plaintiff must allege: "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Anderson*, 848 F. Supp. 2d at 1300 (quoting *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F. 3d 1185, 1193 (10th Cir. 2007)).

First, Defendants do not contest that Plaintiff sufficiently alleges that he suffers from a mental impairment that rises to the level of a disability within the meaning of the ADA and

the RA.  *Motion* [#79] at 8-10; *Am. Compl.* [#62] ¶ 182 (stating that Plaintiff's "serious medical illness and developmental disability constitute mental impairments that substantially limit him in several major life activities, including but not limited to learning, concentrating, thinking, impulse control, pursuing long-term goals, and interacting with others); *see also Response* [#85] at 19-20.

Defendants argue that Plaintiff has not sufficiently alleged disparate treatment, and thus his claims pursuant to the ADA and RA fail as a matter of law.  *Motion* [#79] at 8-10. Plaintiff argues that his disabilities foreclose any meaningful access to CDOC's leveling-out programs that allow individuals to progress out of solitary confinement.  *Response* [#85] at 21-23.  Defendants reply that Plaintiff's ADA and RA claims are "in actuality Eighth Amendment claims" based on CDOC's alleged refusal to provide reasonable accommodations to Plaintiff regarding his medication and treatment.  *Reply* [#90] at 10.

Defendants are correct that "the ADA and the [RA] do not provide a private right of action for substandard medical care."  *Anderson*, 848 F. Supp. at 1300 (citing *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005)).  There is no federal remedy pursuant to the ADA and RA for causes of action that equate to medical malpractice. *Anderson*, 848 F. Supp. at 1300.  However, this characterization misses the point of Plaintiff's claims here.  Plaintiff avers that he has been unable to complete the requirements of the leveling-out program successfully because of his mental impairment and because CDOC officials have prevented him from obtaining adequate treatment and accommodation so that he may progress out of solitary confinement.  *See Response* [#85] at 21-24; *Am. Compl.* [#62] at 31-35.  Thus, at this early stage of the litigation, the Court cannot find that Plaintiff's claims pursuant to the ADA and RA should be dismissed as a matter of law for

failure to state a claim.  Accordingly, the Court **recommends** that Defendants' Motion to Dismiss these claims be **denied**.

### IV.  Conclusion

Based on the foregoing,

IT IS RESPECTFULLY **RECOMMENDED** that Plaintiff's claims for retrospective declaratory relief be **dismissed without prejudice** and that Defendants' Motion [#79] be **DENIED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated March 26, 2013, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge